[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The 37 year old plaintiff wife has brought this action against the 39 year old defendant husband seeking a dissolution of their marriage that took place on October 21, 1983 at Prospect, Connecticut. The court has jurisdiction based on the plaintiff's continuous residence in Connecticut for at least one year prior to August 6, 1991 when the complaint was signed. No child has been born to the plaintiff since the date of the marriage.
The plaintiff is a hairdresser who worked in her mother's shop earning $200 weekly until January 8, 1986 when the plaintiff's mother gave her the shop which the plaintiff has operated since then as owner. The shop accepts no credit cards obliging the customers to pay in cash or by check. The plaintiff was able to pay for a hot tub (Plaintiff's Exhibit G) costing $3,900 and to pay an additional $2,000 for its installation in a cedar room in the marital home which had been acquired from the plaintiff's uncle for $69,900, financed by a $47,000 CHFA mortgage. The plaintiff testified she was able to contribute at CT Page 2049 least half of the cash deposit from her income to complete the purchase in 1985. The plaintiff and her mother in 1989 traveled to Florida to buy a condominium unit for $61,500 putting $16,500 cash down. The plaintiff testified that $4,500 was money saved from her shop, $6,000 was received from Gail Ashe, (Plaintiff's Exhibit S), plaintiff's aunt, and $6,000 was a gift from her sister.
The court has evaluated the credibility of both the plaintiff's version of the $6,000 received from her sister and her sister's testimony of cash gifts, the fact that no one else was told including the defendant, that such exchanges were in secret. The court concludes that the explanation is not believable. The court infers that the $6,000 was also plaintiff's money that she saved.
The plaintiff has had health problems her entire adult life evidenced by abdominal pain, upset stomach and headaches. In May, 1990, the plaintiff had a hysterectomy (Plaintiff's Exhibit C) after which she and the defendant went to Florida during her recuperation. More recently the plaintiff has been treating with a Dr. Boyd, a psychiatrist referred by plaintiff's gynecologist and Dr. Shah, a psychiatrist who began treating her in March, 1992 for anxiety and feelings of panic and who prescribed anti-anxiety medicine.
In January, 1990, the plaintiff was admitted to the hospital (Plaintiff's Exhibit D) for a surgical procedure. In July, 1991 was admitted to the hospital (Plaintiff's Exhibit D). Upon discharge she went to her mother's home, was readmitted again (Plaintiff's Exhibit A) and on August 1, 1991 was discharged. The plaintiff remained at her mother's home for the remainder of 1991. The plaintiff then obtained a temporary restraining order (Defendant's Exhibit #2) and resumed possession of the marital home thereafter until the trial.
The parties first separated for a couple of weeks in November, 1989 and again in February, 1990 for about a month. On December, 1989 the parties sought marriage counselling for two sessions. The plaintiff again sought individual marriage counselling during October and November, 1990.
The plaintiff's own assessment of her marriage was that it was viable until defendant's Montana hunting trip in October, 1989. The plaintiff testified that she and the defendant last CT Page 2050 professed to love each other in May, 1990 which coincided with her convalescence in Florida.
The defendant professed not to be aware that his expanding hunting and fishing activities were becoming more and more annoying to the plaintiff. As the cost of the trips increased, her resentment increased. He paid for the excursions with bonus money received from work. The evidence is clear that the defendant had been an avid hunter throughout the marriage. For her part, the plaintiff believed the defendant should have spent more time at the condo in Florida with her rather than on hunting trips. The obvious inference is that the parties had no common interests, failed to communicate and the marriage deteriorated.
During the marriage, the defendant was employed as an estimator, most recently earning $545 gross weekly and $430 net after taxes. He turned over his wages to the plaintiff who ran the household budget. The defendant concedes that both parties contributed to the installation of the appliances, the cabinets, the landscaping, and the various floorings in the house. The court finds that the Prospect real estate has a present fair market value of $160,000 and is subject to a first mortgage balance of about $55,000.
The parties relative stations in life, educational background and their respective ability to earn a living in the future are comparable. The defendant enjoys good health while the plaintiff has a history of health problems as noted above.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered on the plaintiff's complaint, dissolving the marriage on the ground alleged of irretrievable breakdown.
2. The defendant's cross complaint is dismissed as moot.
3. The defendant shall pay to the plaintiff as periodic alimony the sum of $100 weekly for a period of three (3) years, or until the plaintiff's sooner remarriage or death. Said term and amount are non-modifiable. A wage withholding order is entered pursuant to statute.
4. The plaintiff is awarded sole ownership of the CT Page 2051 condominium unit located in Florida together with its contents. The plaintiff shall hold the defendant harmless and indemnified from any claims arising from his ownership. The defendant is ordered to convey his interest to the plaintiff within 30 days.
5. The real estate known as 17 Timber Hill Lane, Prospect is ordered sold. The plaintiff is awarded sole possession in the interim. If the parties cannot agree upon a broker or other term of sale either party may apply to the court for an articulation. Upon sale, after the payment of all encumbrances and costs of sale, the net proceeds shall be divided equally between the parties.
So long as the plaintiff occupies the premises, she shall pay the utilities and mortgage installments.
6. The plaintiff is awarded the contents of the Prospect home as her sole property except for defendant's gun cabinet, guns, all other sporting equipment used by the defendant, his mounted trophies of stuffed animals, a lamp in the game room, wet vacuum in garage, a meat smoker, caribou antlers, a pot belly stove, a small bed that defendant owned prior to the marriage, an oak rocker with black vinyl set, a marble top hutch, a clock from the living room, other miscellaneous hunting materials, a styro-foam block, the defendant's Christmas decorations, a truck cap in the yard, two (2) Bud beer steins and his saws, all of which are awarded to the defendant as his sole property.
7. The plaintiff is awarded the 1981 Olds Delta, 1968 Camaro and the 1963 Falcon motor vehicles as her sole property.
8. The defendant is awarded the 1980 Ford truck and the 1967 T-Bird motor vehicles as his sole property.
9. The plaintiff shall remain sole owner of her business known as P.J.'s Haircare Center.
10. The defendant shall retain sole ownership of his profit sharing plan.
11. Each party shall pay the bills each has listed on the financial affidavit each has filed.
12. The defendant shall take no action which could jeopardize plaintiff's C.O.B.R.A. rights to medical insurance available at CT Page 2052 his employer.
13. Each party shall bear the litigation expenses each has incurred.
Counsel for the plaintiff shall prepare the judgment file within 21 days of the date hereof.
HARRIGAN, J.